UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MARY J. MAURO on behalf of herself, and on behalf of her deceased husband MARIO F. MAURO,

      Plaintiffs,

v.

ANDREW M. CUOMO in both his official and individual capacity; HOWARD ZUCKER in both his individual and official capacity; STATE UNIVERSITY OF NEW YORK, d/b/a THE LONG ISLAND STATE VETERANS HOME; and FRED SGANGA in both his individual and official capacity,

      Defendants.

**MEMORANDUM & ORDER**
21-CV-1165 (HG) (ARL)

**HECTOR GONZALEZ**, United States District Judge:

  Plaintiff Mary J. Mauro brings this action on behalf of herself and her deceased husband Mario F. Mauro (together, "Plaintiffs"), against individual Defendants Andrew M. Cuomo, Howard Zucker and Fred Sganga, in their official and individual capacities, and entity Defendant the Long Island State Veterans Home ("LISVH") (collectively, "Defendants"), to recover money damages for Defendants' alleged infringement of Plaintiff Mary Mauro's statutory right to visit and care for her disabled husband, who resided at LISVH.  ECF No. 47 (Second Amended Complaint).[1]  Plaintiffs assert that the individual Defendants violated the Federal Nursing Home Reform Act of 1989 ("FNHRA"), 42 U.S.C. § 1396r, by restricting the ability of Plaintiff Mario

---

[1]  Plaintiffs filed their original complaint on March 4, 2021, and an amended complaint on April 5, 2021.  ECF Nos. 1, 22.  On December 20, 2021, Plaintiffs filed a motion to amend their first amended complaint.  ECF No. 45.  On December 28, 2021, Defendants consented to Plaintiffs' motion.  ECF No. 46.  On December 28, 2021, Plaintiffs filed their second amended complaint.  ECF No. 47.

Mauro's family members to visit him, which they allege is actionable under 42 U.S.C. § 1983. *Id.* ¶¶ 75–77.

Presently before the Court are two separate motions to dismiss Plaintiffs' Second Amended Complaint filed by Defendant Cuomo, ECF No. 56, and Defendants Zucker, Sganga and LISVH (together, "LISVH Defendants"), ECF No. 55. For the reasons set forth below, the Court grants the motions in their entirety.[2]

## BACKGROUND

Plaintiffs were married for over sixty 60 years. ECF No. 47 ¶ 2. On January 9, 2020, Plaintiff Mario Mauro began living at LISVH. *Id.* ¶ 28. His family visited him every day to assist with his care and to keep him company. *Id.*

On March 11, 2020, the World Health Organization declared the coronavirus ("COVID-19") to be a global pandemic and called on countries to "take urgent and aggressive action" to curb the spread of the virus.[3] On March 13, 2020, the New York Department of Health ("DOH") issued a health advisory recommending that nursing homes, such as LISVH, prohibit visitations except when medically necessary, such as an end-of-life situation. *Id.* ¶ 29; ECF No. 47-4 (DOH Health Advisory, dated March 13, 2020). On March 24, 2020, LISVH informed Plaintiff Mario

---

[2] In their opposition to the motions, Plaintiffs voluntarily withdrew their claims under the Americans with Disability Act ("ADA") and Section 504 of the Rehabilitation Act ("RA") against all Defendants. ECF No. 58 at 10 n.1; ECF No. 59 at 10 n.1. In light of Plaintiffs' voluntary withdrawal of those claims, only the FNHRA claim against the individual Defendants remains. Defendant LISVH was only named in Plaintiffs' ADA and RA claims. *See* ECF No. 47 at 31–32.

[3] WORLD HEALTH ORGANIZATION, "WHO Director-General's opening remarks at the media briefing on COVID-19 – 11 March 2020" (Mar. 11, 2020), https://www.who.int/director-general/speeches/detail/who-director-general-s-opening-remarks-at-the-media-briefing-on-covid-19---11-march-2020 (last visited March 8, 2023). On a motion to dismiss, the Court may consider matters of which judicial notice may be taken. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002).

Mauro's family that they would no longer be allowed to visit Mr. Mauro. ECF No. 47 ¶ 29. LISVH allegedly restricted Plaintiff Mario Mauro's family from visiting him from March 24, 2020, until March 4, 2021, when Plaintiffs filed the instant action. *Id.* ¶ 30.

That same day, March 4, 2021, Plaintiffs also filed a motion for a temporary restraining order and preliminary injunction seeking to resume visitations at LISVH. *Id.* ¶ 38; ECF No. 1 (Complaint); ECF No. 2 (Emergency Motion for Temporary Restraining Order).[4] Plaintiffs allege that in response to the instant action, Defendants immediately permitted Plaintiff Mario Mauro's family to visit him. ECF No. 47 ¶ 38. Plaintiff Mario Mauro's family resumed visiting him until his death on May 30, 2021. *Id.*

On July 21, 2022, Defendants filed their motions to dismiss. ECF Nos. 55, 56. On August 17, 2022, Plaintiffs filed their oppositions, ECF Nos. 58, 59, and thereafter Defendants filed their replies. ECF Nos. 61, 62.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[5] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In resolving a motion to dismiss, "consideration is limited to the factual allegations in plaintiffs' amended complaint, which are accepted as true." *Brass v. Am.*

---

[4] Plaintiff Mario Mauro's passing on May 30, 2021 rendered Plaintiffs' motion for a temporary restraining order and preliminary injunction moot. *See* ECF Text Order dated August 2, 2021.

[5] Unless noted, case law quotations in this Order accept all alterations and omit all internal quotation marks, citations, and footnotes.

3

*Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993). While the Court must draw all reasonable inferences in favor of the non-moving party, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a plausible claim. *Iqbal*, 556 U.S. at 678.

## DISCUSSION

Plaintiffs assert that Defendant Cuomo, former Governor of New York, Defendant Zucker, former Commissioner of DOH, and Defendant Sganga, Executive Director of LISVH, violated the FNHRA, both in their official and individual capacities, by placing restrictions on family visits at nursing homes, thus prohibiting Plaintiff Mario Mauro's immediate family from visiting him at LISVH for almost a year. Plaintiffs claim that such restrictions clearly violate federal law, notwithstanding the COVID-19 pandemic, and are actionable pursuant to 42 U.S.C. § 1983. ECF No. 47 ¶¶ 39–60, 76–77. Defendants respond that Plaintiffs' Second Amended Complaint should be dismissed because: (i) state officials acting in their official capacity have sovereign immunity from suit, *see* ECF No. 55-1 at 10–11 (LISVH Motion); (ii) Plaintiffs fail to state a claim because there was no violation of their federal rights, *see* ECF No. 55-1 at 17–23; ECF No. 56-1 at 20–23 (Cuomo Motion); and (iii) even if Plaintiffs' federal rights were violated, Defendants acted in their individual capacities and are shielded by the doctrine of qualified immunity, *see* ECF No. 55-1 at 11–13; ECF No. 56-1 at 14–18. The Court addresses each of these arguments in turn.

**I.     The Eleventh Amendment Bars Plaintiffs' FNHRA Claim Against the Individual Defendants in Their Official Capacities**

Defendants Cuomo, Zucker, and Sganga are all immune from Plaintiffs' claim for damages for any action taken in their official capacities because of the Eleventh Amendment. "The Eleventh Amendment confirms that states, state entities, and state officials acting in their

official capacities have sovereign immunity from suit." *Kelly v. N.Y. State Unified Ct. Sys.*, No. 21-cv-1633, 2022 WL 1210665, at *1 (2d Cir. Apr. 25, 2022).  At the time the lawsuit was initiated, Defendant Cuomo was Governor of New York, Defendant Zucker was the Commissioner of DOH, and Defendant Sganga was the Executive Director of LISVH, a New York State entity.[6]  The Eleventh Amendment bars Plaintiffs from suing the individual Defendants "[t]o the extent that any of Plaintiff[s'] claims for money damages are being brought against any of [them] in their official capacities." *Kelly v. New York*, No. 19-cv-2063, 2020 WL 7042764, at *8 (E.D.N.Y. Nov. 30, 2020); *see also Arafa v. New York*, No. 22-cv-4475, 2022 WL 3867650, at *2 (E.D.N.Y. Aug. 30, 2022) (explaining that "Congress did not abrogate New York's Eleventh Amendment immunity by enacting Section 1983").

There are three exceptions to this rule:  (i) a state may waive its immunity from suit; (ii) Congress "may abrogate the sovereign immunity of the States by acting pursuant to a grant of constitutional authority"; and (iii) "under the *Ex parte Young* doctrine, the Eleventh Amendment does not bar a suit against a state official when that suit seeks . . . injunctive relief." *Deadwiley v. N.Y. State Off. of Child. & Fam. Servs.*, 97 F. Supp. 3d 110, 115 (E.D.N.Y. 2015) (citing *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 73 (1996)).

Here, there is nothing to suggest that New York State waived Defendants' right to sovereign immunity. *See Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 114 (2d Cir. 2001) ("As is the case with the waiver of any constitutional right, an effective waiver of sovereign immunity requires an intentional relinquishment or abandonment of a known right or privilege.").  There is also nothing in the FNHRA that suggests a Congressional abrogation of

---

[6]   Plaintiffs do not address sovereign immunity in their motion papers and therefore do not dispute LISVH's status as a state entity.

5

the Eleventh Amendment, and as stated above, Section 1983 did not by itself abrogate the states' Eleventh Amendment immunity.  *See Arafa*, 2022 WL 3867650, at *2.  With respect to the third exception,—the *Ex Parte Young* doctrine— the Court finds that it is no longer applicable because Plaintiff Mario Mauro has passed away, and Plaintiffs are no longer seeking injunctive relief.  *See* ECF No. 42-1 (Motion to Substitute Party); Text Order dated August 2, 2021 (finding Plaintiffs' motion for a temporary restraining order and preliminary injunction moot in light of Plaintiff Mario Mauro's passing).  The *Ex Parte Young* doctrine applies where a plaintiff alleges an ongoing violation of federal law, but courts have declined to extend relief to claims for retrospective relief.  *See Ward v. Thomas*, 207 F.3d 114, 119 (2d Cir. 2000) ("[S]uits against states and their officials seeking damages for past injuries are firmly foreclosed by the Eleventh Amendment.").  Given Plaintiff Mario Mauro's passing, the Court cannot order injunctive relief regarding visitation and, therefore, the *Ex Parte Young* doctrine does not apply.

Accordingly, the Court finds that Defendants are all immune from Plaintiffs' FNHRA claim for damages for any action taken in their official capacities.

## II.     Plaintiffs' FNHRA Claim Must Be Dismissed for Failure to State a Claim

Plaintiffs also argue that Defendants are liable in their individual capacities for alleged violations of the FNHRA.  ECF No. 47 ¶¶ 23, 24, 26.  Defendants respond that Plaintiffs' claim should be dismissed as a matter of law because the FNHRA does not confer a private right of action, and even if it did, Plaintiffs have failed to establish that Defendants violated the law.  ECF No. 55-1 at 17–23 (LISVH Motion); ECF No. 56-1 at 20–23 (Cuomo Motion).  Defendant Cuomo further argues that Plaintiffs' FNHRA claim against him in his individual capacity also fails as a matter of law because he was not personally involved in or aware of LISVH's actions with regard to Plaintiff Mario Mauro's care.  *See* ECF No. 56-1 at 18–20.

6

A. <u>Courts Are Split Regarding Whether FNHRA Confers a Private Right of Action Under Section 1983</u>

As a threshold matter, the Court must consider whether the FNHRA confers a federal right upon Plaintiffs that is privately enforceable under Section 1983. Defendants argue that Plaintiffs fail to state a cause of action because the FNHRA does not give rise to a private cause of action. ECF No. 55-1 at 17–20 (LISVH Motion); ECF No. 56-1 at 15–16 (Cuomo Motion). In contrast, Plaintiffs argue that the FNHRA creates an enforceable right under Section 1983. *See* ECF No. 59 at 14–17.

"Section 1983 imposes liability on anyone who, under color of state law, deprives a person of any rights, privileges, or immunities secured by the Constitution and laws, and allows parties to seek damages against state actors for alleged violations of federal rights. It is enforceable only for violations of federal *rights*, not merely violations of federal laws." *Torraco v. Port Auth.*, 615 F.3d 129, 136 (2d Cir. 2010) (emphasis in original). In order to determine the existence of a federal right enforceable under Section 1983, the Court considers the following factors: (i) whether Congress "intended that the provision in question benefit the plaintiff"; (ii) whether plaintiff has "demonstrate[d] that the right assertedly protected by the statute is not so vague and amorphous that its enforcement would strain judicial competence"; (iii) whether "the statute . . . *unambiguously* impose[s] a binding obligation on the States." *Blessing v. Freestone*, 520 U.S. 329, 340–41 (1997) (emphasis added).

Courts in this Circuit are split as to whether the FNHRA creates a private right of action. *Compare Baum v. N. Dutchess Hosp.*, 764 F. Supp. 2d 410, 425 (N.D.N.Y. 2011) (finding that "the overall text and structure of FNHRA provides no indication that Congress intended to create" a federally enforceable right for nursing home residents), *with Pantalone ex rel. Pantalone v. County of Fulton*, No. 10-cv-913, 2011 WL 1457935, at *8 (N.D.N.Y. Apr. 15,

7

2011) (finding that the individual rights conferred by the FNHRA are enforceable through Section 1983). *See also Boykin v. 1 Prospect Park ALF, LLC*, 993 F. Supp. 2d 264, 281 (E.D.N.Y. 2014) ("The federal courts are split as to whether various provisions of FNHRA confer individual rights that are enforceable through section 1983."); *LaRock v. Albany County Nursing Home*, No. 19-cv-604, 2020 WL 1530792, at *6 (N.D.N.Y. Mar. 31, 2020) (noting the federal court split and citing to *Baum* and *Pantalone*). Given this split, and out of an abundance of caution, until the Second Circuit conclusively determines whether the FNHRA confers a federal *right* to nursing home residents, the Court will assume that it does for the purposes of this Order, but does not make an explicit finding as to this issue.

B. Plaintiffs Fail Plausibly to Allege a Violation of FNHRA

Defendants argue that, assuming *arguendo* that the FNHRA does confer a private right of action under Section 1983, Plaintiffs nevertheless fail to state a claim because they do not establish a statutory right to unrestricted visitation in the midst of a global pandemic, ECF No. 55-1 at 20–23 (LISVH Motion); ECF No. 56-1 at 20–23 (Cuomo Motion).

The general provisions of the FNHRA provide that residents have the right to receive services with reasonable accommodation of "individual needs and preferences, except where the health or safety of the individual or other residents would be endangered." 42 U.S.C. § 1396r. The "access and visitation rights" provision of the FNHRA provides that "a nursing facility must . . . permit immediate access to a resident . . . by immediate family or other relatives of the resident." *Id*. The FNHRA's implementing regulations provide that with respect to visitation, nursing home residents have "a right to receive visitors . . . *in a manner that does not impose on the rights of another resident*." 42 C.F.R. § 483.10 (f)(4) (emphasis added). The regulations further require that "the facility must provide immediate access to a resident by immediate

8

family and other relatives of the resident." 42 C.F.R. § 483.10 (f)(4)(ii).  However, the regulations also specifically state that the facility must have written policies and procedures regarding visitation including those "setting forth any clinically necessary or reasonable restriction or limitation or safety restriction or limitation . . . that the facility may need to place on such [resident] rights and the reasons for the clinical or safety restriction or limitation." 42 C.F.R. § 483.10 (f)(4)(v).  The implementing regulations reiterate that residents have a right to receive services in nursing home facilities with reasonable accommodation of their needs and preferences, "except when to do so would endanger the health or safety of the resident or other residents." 42 C.F.R. § 483.10 (e)(3).

Assuming that Plaintiffs can enforce the FNHRA through Section 1983, the Court finds that Plaintiffs have failed plausibly to allege that the individual Defendants violated the law.  The Court finds that the FNHRA and its implementing regulations unambiguously contemplate nursing home facilities placing restrictions on visitation, including visits by immediate family.  Plaintiffs' argument that the statute does not permit any limitations or restrictions to be placed on immediate family visits under any circumstances, *see* ECF No. 59 at 30, is not persuasive.  While the Court is sympathetic to Plaintiffs' circumstances, and recognizes how difficult it must have been for Plaintiffs to be apart during the height of the COVID-19 pandemic, the Court finds that the FNHRA does not prohibit nursing home facilities from imposing restrictions on visitation when the health and safety of all residents are at risk.

Plaintiffs suggest that the FNHRA's general provisions regarding the health and safety of residents do not apply to the specific provision permitting "immediate access to a resident . . . by immediate family." 42 U.S.C. § 1396r; *see also* ECF No. 59 at 17.  Plaintiffs insist that the statute gives "immediate family the right to visitation without restrictions." ECF No. 59 at 19.

9

A reading of the statute as Plaintiffs suggest would permit immediate family to visit under all circumstances, including a circumstance in which an immediate family member intends to do a resident harm, or is disruptive, or abusive, or a situation in which a nursing home facility is under a safety lockdown due to threats.  It is implausible that Congress intended for the FNHRA to be interpreted in such an unreasonable and uncompromising fashion.  COVID-19 was and continues to be, a significant threat to public health and to the safety of nursing home residents.  As such, even if Plaintiffs could enforce the FNHRA through Section 1983, the Court finds that Plaintiffs fail to state a plausible claim because the statute contemplates limitations and restrictions in the face of threats to the health and safety of nursing home residents.  Accordingly, Plaintiffs' FNHRA claim against Defendants Cuomo, Zucker, and Sganga in their individual capacities must be dismissed for failure to state a claim.

    C.  <u>Defendant Cuomo Was Not Personally Involved in Any Alleged Violation of FNHRA</u>

Defendant Cuomo argues that Plaintiffs' FNHRA claim should be dismissed against him because he did not "directly participate[] in or cause[], or was even aware of, LISVH's actions with regard to Mr. Mauro's care and attention." ECF No. 56-1 at 19.  Plaintiffs respond that Defendant Cuomo "personally ordered that all nursing facilities in New York stop all access and visitation between residents and immediate family." ECF No. 59 at 28.

To bring a Section 1983 claim against New York State officials, Plaintiffs may not simply rely on their status as officials with supervisory authority, but instead "must plead and prove that each Government-official defendant, through the official's *own individual actions*, has violated the Constitution" or Plaintiffs' federal rights. *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (emphasis added); *see also Warren v. Pataki*, 823 F.3d 125, 136 (2d Cir. 2016) ("To establish a section 1983 claim, a plaintiff must establish a given defendant's personal

10

involvement in the claimed violation in order to hold that defendant liable in his individual capacity.").

The Court finds that Plaintiffs have insufficiently alleged that Defendant Cuomo was personally involved with specifically restricting Plaintiff Mario Mauro's access to family visitation. While it is true that Defendant Cuomo participated in issuing executive orders and guidance regarding the COVID-19 pandemic, LISVH was responsible for enforcing those mandates and had discretion in determining whether Plaintiffs qualified for an exception under said guidance. *See, e.g.*, ECF No. 47-4 at 1 (DOH Health Advisory, dated March 13, 2020) ("Effective immediately, suspend all visitation except when medically necessary (*i.e. visitor is essential to the care of the patient* or is providing support in imminent end-of-life situations) . . . ." (emphasis added)); ECF No. 47-7 at 2 (DOH Letter to Nursing Home Operators, dated November 10, 2020) ("This advisory clarifies that as applicable to nursing homes in red and orange zones, visitation is suspended except for in the following instances: compassionate care[,]. . . medically or clinically necessary (*i.e. visitor is essential to the care of the pageint as determined by the facility and treating provider*), and necessary legal representatives." (emphasis added)); ECF No. 47-17 at 1 (DOH Health Advisory, dated June 10, 2020) ("Effective immediately, suspend all visitation except when medically necessary . . . , or *if otherwise authorized.*" (emphasis added)). Accordingly, Defendant Cuomo "cannot be held liable for damages under § 1983 merely because he held a high position of authority." *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 127 (2d Cir. 2004).

### III. Plaintiffs' FNHRA Claim Against the Individual Defendants Must Be Dismissed Pursuant to the Doctrine of Qualified Immunity

Defendants contend that Plaintiffs' FNHRA claim should be dismissed against Defendants Cuomo, Zucker and Sganga in their individual capacities under the doctrine of

11

qualified immunity, because Plaintiffs "fail to allege [a] violation of a clearly established right to unrestricted in-person visitation in a nursing home during a pandemic." *See* ECF No. 55-1 at 11–13 (LISVH Motion); ECF No. 56-1 at 14–18 (Cuomo Motion).  Plaintiffs respond that the qualified immunity defense does not apply here because the individual Defendants knowingly violated clearly established law.  ECF No. 58 at 27–32.  Although the Court does not need to reach the issue of qualified immunity, even if Plaintiffs had established that Defendants Cuomo, Zucker and Sganga violated the FNHRA—which they do not—the Court would nevertheless conclude that Defendants are entitled to qualified immunity.

"Qualified immunity shields government officials performing discretionary functions from suits for money damages unless their conduct violates clearly established law of which a reasonable official would have known.  It gives government officials the breathing room to make reasonable, even if mistaken, judgments and protects all but the plainly incompetent or those who knowingly violate the law." *Nat'l Rifle Assoc. of Am. v. Vullo*, 49 F.4th 700, 714 (2d Cir. 2022).  The defense will apply unless "(1) the plaintiff sufficiently pleaded a constitutional [or federal] violation and (2) the law the official allegedly violated was clearly established and apparent to a reasonable official at the time of the alleged conduct." *Id.*

As discussed previously, *see supra* section II, the Court finds that Plaintiffs have not sufficiently pled a violation of their federal rights.  Therefore, Plaintiffs fail to meet their burden on the first prong of the two-factor test to defeat the qualified immunity defense.  Nevertheless, the Court also finds that it was not clearly established that placing limitations on family visitations in nursing homes during an unprecedented global pandemic would violate Plaintiffs' federal rights.  "When [state] officials undertake to act in areas fraught with medical and scientific uncertainties, their latitude must be especially broad." *South Bay United Pentecostal*

*Church v. Newsom*, 140 S.Ct. 1613, 1613 (2020) (Roberts, C.J., concurring in the judgment). Unless those "broad limits" are exceeded, "they should not be subject to second-guessing by an unelected federal judiciary, which lacks the background, competence, and expertise to assess public health and is not accountable to the people." *Id.* at 1613–14 (noting that because local officials were actively shaping responses to changing facts during the pandemic, "[t]he notion that it is indisputably clear that the Government's limitations [on particular social activities] are unconstitutional seems quite improbable"); *see also Jacobson v. Massachusetts*, 197 U.S. 11, 38 (1905) (holding that the Constitution entrusts "[t]he safety and the health of the people" to the politically accountable officials of the States).

Despite the absence of a case directly on point, Plaintiffs argue that existing precedent "has placed the statutory or constitutional question beyond debate" because the individual Defendants had fair warning that they needed to comply with the FNHRA. ECF No. 58 at 27–31 (citing *Pourkavoos v. Town of Avon*, 823 F. App'x 53, 61 (2d. Cir. 2020)). While it is true that there is no precisely analogous case, federal courts around the country have granted state officials qualified immunity at the motion to dismiss stage for restrictions implemented during the COVID-19 pandemic on account of the public health crisis, and the ongoing and changing circumstances. *See, e.g.*, *Glow in One Mini Golf, LLC v. Walz*, 37 F.4th 1365, 1374 (8th Cir. 2022) (affirming district court's application of qualified immunity to claims for money damages because plaintiffs failed to show that state official's implementation of restrictions on businesses was a violation of constitutional law); *Skatemore, Inc. v. Whitmer*, 40 F.4th 727, 738 (6th Cir. 2022) (affirming district court's decision to confer qualified immunity because "there is no clearly established precedent that pandemic-era regulations limiting the use of individuals' commercial properties can constitute a Fifth Amendment taking."); *Bastian v. Lamont*, No. 21-

13

cv-1249, 2022 WL 2477863, at *7 (D. Conn. July 6, 2022) (granting qualified immunity, dismissing plaintiffs' complaint and finding that "it is implausible that every reasonable official would have understood issuing or enforcing public health policies [during the COVID-19 pandemic] violated the plaintiffs' rights"); *Pleasant View Baptist Church v. Beshear,* No. 20-cv-166, 2021 WL 4496386, at *8 (E.D. Ky. Sept. 30, 2021) ("After examining the applicable precedent, particularly in light of a global pandemic, Pleasant View cannot demonstrate that Governor Beshear's issuance of [an executive order temporarily halting in-person learning] violated a clearly established constitutional right, and qualified immunity will be granted on that basis."); *New Mexico Elks Assoc. v. Grisham*, 595 F. Supp. 3d 1018, 1028 (D.N.M. 2022) (finding that state officials are entitled to qualified immunity for placing restrictions on in-person operations of businesses not classified as "essential"); *Brewer v. Dauphin County Prison*, No. 21-cv-1291, 2022 WL 16858014, at *10 (M.D. Pa. June 29, 2022) (finding that "there is no precedent that would have made it clear to a reasonable official that the measures [d]efendants took unreasonably responded to the COVID-19 pandemic"), *report and recommendation adopted in full*, 2022 WL 16855566, at *4–5 (M.D. Pa. Nov. 10, 2022). Because our understanding of the COVID-19 pandemic was and is evolving, the Court is not aware of any precedent that would have made it clear to the Defendants that the measures they took were unreasonable responses to a public health crisis.

      Nevertheless, "even where the law is clearly established and the scope of an official's permissible conduct is clearly defined, the qualified immunity defense also protects an official if it was objectively reasonable for him at the time of the challenged action to believe his acts were lawful. Accordingly, the question to be answered is whether a reasonable government officer, confronted with the facts as alleged by plaintiff, could reasonably have believed that his actions

14

did not violate some settled constitutional right." *Cloister East, Inc. v. N.Y. State Liquor Auth.*, 563 F. Supp. 3d 90, 108 (S.D.N.Y. 2021). On March 13, 2020, the Centers for Medicare & Medicaid Services ("CMS") issued guidance suspending all visitation rights in nursing homes except under limited circumstances, such as an end-of life situation.[7] While it is true that this guidance was later revised, Plaintiffs have failed to establish that a reasonable state official confronted with the facts then known by the Defendants would have believed that their actions were unlawful.[8] The rates of deaths, particularly in nursing homes, at the start of the pandemic were alarmingly high.[9] Between March 4, 2020, and May 23, 2021, the number of nursing home resident deaths due to COVID-19 in New York State was 13,919 (with 9,650 deaths occurring between March 4, 2020, and July 15, 2020, and 4,136 deaths occurring between July 16, 2020, and March 16, 2021).[10] New York State officials were tasked with acting quickly to evolving

---

[7]   *See* Center for Clinical Standards and Quality/Quality, Safety & Oversight Group, GUIDANCE FOR INFECTION CONTROL AND PREVENTION OF CORONAVIRUS DISEASE 2019 (COVID-19) IN NURSING HOMES, CENTERS FOR MEDICARE & MEDICAID SERVICES (March 13, 2020), https://www.cms.gov/files/document/qso-20-14-nh-revised.pdf ("Facilities should restrict visitation of all visitors and non-essential health care personnel, except for certain compassionate care situations, such as an end-of-life situation . . . . Note: If a state implements actions that exceed CMS requirements, such as a ban on all visitation through a governor's executive order, a facility would not be out of compliance with CMS' requirements.").

[8]   On July 10, 2020, New York's DOH released guidance to nursing homes including criteria for nursing homes to resume visitation. *See* Office of the New York State Comptroller, *Use, Collection and Reporting of Infection Control Data*, REPORT 2020-S-55 at 7 (March 2022), https://www.osc.state.ny.us/files/state-agencies/audits/pdf/sga-2022-20s55.pdf.

[9]   Office of the New York State Comptroller, *Use, Collection and Reporting of Infection Control Data*, REPORT 2020-S-55 at 7 (explaining how a case of COVID-19 identified in a nursing home on February 28, 2020, in Washington state led to 37 deaths and the critical need for rapid and sustained public health interventions).

[10]   *Id.* at 8 (Table 1). The Court takes judicial notice of the number of nursing home deaths in New York between March 4, 2020, and May 23, 2021. *See supra* n.4 (citing *Chambers*, 282 F.3d at 152–53).

and dynamic circumstances, and had to balance Plaintiffs' alleged federal right to visitation, with their obligation to protect nursing home residents from the COVID-19 pandemic. Under these circumstances, reasonable mistakes in interpreting federal statutes are likely. *See Sudler v. City of New York*, 689 F.3d 159, 174 (2d Cir. 2012) ("Qualified immunity thus shields government officials from liability when they make reasonable mistakes about the legality of their actions, and applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."); *DiBlasio v. Novello*, 413 F. App'x 352, 356 (2d Cir. 2011) ("The very purpose of qualified immunity is to protect officials when their jobs require them to make difficult on-the-job decisions. This is especially true when officials are forced to act quickly, such as in the context of a public health emergency."). Accordingly, the Court finds that the qualified immunity defense is warranted here, even if Defendants violated "clearly established" law because "it was objectively reasonable for [Defendants] at the time of the challenged action to believe [their] acts were lawful." *Cloister East*, 563 F. Supp. 3d at 108.

**CONCLUSION**

For the foregoing reasons, Defendants' motions to dismiss are GRANTED in their entirety and Plaintiffs' remaining FNHRA claim is dismissed with prejudice.[11] The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

/s/ Hector Gonzalez
HECTOR GONZALEZ
United States District Judge

Dated: Brooklyn, New York
March 8, 2023

---

[11] The Court finds that dismissal with prejudice is warranted for two reasons: "First, Plaintiff[s] ha[ve] not asked for leave to amend as an alternative to denying the motion to dismiss." *Goodman v. Goodman*, No. 21-cv-10902, 2022 WL 17826390, at *21 (S.D.N.Y. Dec. 21, 2022); *see also Cybercreek Ent., LLC v. U.S. Underwriters Ins. Co.*, 696 F. App'x 554, 555 (2d Cir. 2017) ("[Plaintiffs'] failure to request leave to amend alone supports the District Court's dismissal with prejudice."). Second, the Court finds that any amendment would be "futile" because the Court cannot identify what additional facts Plaintiffs could allege that would defeat Defendants' qualified immunity defense. *See Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008).